**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ED MERKNER, THOMAS E. RODGERS, PETER E. CONNOR, JACK KRIESS and ED MUSKO, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | **CASE NO.  1:09-CV-423-TSB** |
| | ) ) | **CLASS ACTION** |
| AK STEEL CORPORATION, | ) ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES

Plaintiffs, Ed Merkner, Thomas E. Rodgers, Peter E. Connor, Jack Kriess and Ed Musko, and Class Counsel, hereby petition the Court for approval of attorney fees and expenses in the amount of $9,100,000.00 (ten percent of the gross cash portion of the settlement herein of $91,000,000) pursuant to Fed. R. Civ. P. 23(h) and 54(d) and in accordance with the parties' Hourly and Salaried Class Settlement Agreements as preliminarily approved by the Court on September 24, 2010. (See Order Granting Joint Motion, Doc. 69).  The motion is unopposed by Defendant, and the sole objector has withdrawn her objection. The amount of attorney fees (which includes all expenses), is the amount agreed to between Plaintiffs' counsel and the class representatives in this case and is supported by the applicable law.

Wherefore, Plaintiffs respectfully request that this motion be granted and that the Court award attorney fees and costs as agreed to by the parties and requested in this motion.

1

Dated:  December 20, 2010.                    RESPECTFULLY SUBMITTED,


s/Mona Lisa Wallace, Esq.
Mona Lisa Wallace, Esq.
John Hughes, Esq.
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
jhughes@wallacegraham.com

Gregory F. Coleman, Esq.
Greg Coleman Law PC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37903
BPR No. 014092
(865) 247-0080 (phone)
greg@gregcolemanlaw.com

Admitted Pro Hac Vice

Marc G. Pera
Ohio Bar No. 69231
The Moore Law Firm
1060 Nimitzview Dr., Suite 200
Cincinnati, Ohio 45230
(513) 232-2000 (phone)
mpera@moorelaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: December 20, 2010

<div style="margin-left:40%">

s/Mona Lisa Wallace, Esq.
Mona Lisa Wallace, Esq.
John Hughes, Esq.
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Admitted Pro Hac Vice
Attorneys for Plaintiffs

</div>

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| ED MERKNER, THOMAS E. RODGERS, PETER E. CONNOR, JACK KRIESS and ED MUSKO, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.  1:09-CV-423-TSB |
| vs. | ) ) | CLASS ACTION |
| AK STEEL CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND EXPENSES

# **TABLE OF CONTENTS**

I. RULE 7.2(a)(3) SUMMARY OF MEMORANDUM ......................................................... 1

II. STATEMENT OF FACTS ................................................................................................ 5
    A. Benefits Conferred by the Settlement. ...................................................................... 6
    B. Provisions of the Client Retainer Agreements; Fee Sought Compared to
        Overall Size of Settlement .......................................................................................... 7
    C. Lack of Objectors to the Settlement. ........................................................................ 7

III. ARGUMENT ................................................................................................................... 8
    A. Bases for Court Authority to Award Fees and Costs. ............................................... 8
        1. Fees under ERISA Section 502(g)(1). ................................................................. 9
        2. Fees under Fed. R. Civ. P. 23(h). ........................................................................ 9
        3. Fees under "Common Fund" Approach ............................................................ 10
    B. Fees under "Common Fund" – Percentage of Recovery. ......................................... 11
    C. Fees under "Common Fund" – "Lodestar." ............................................................. 16
    D. Analysis of Fees under the *Rawlings* Factors ....................................................... 23
        1. Benefit Achieved for the Plaintiff Class. .......................................................... 23
        2. The Value of Plaintiffs' Counsel's Services ...................................................... 25
        3. Counsel Undertook Action on a Contingent Fee Basis ..................................... 26
        4. The Public Interest Supports the Requested Fee. ............................................. 27
        5. Fee Reasonable Considering Complexity of Action ......................................... 28
        6. Fee is Supported by Counsel's Demonstrated Skill. ......................................... 29
        7. Lack of Objections to the Requested Fee .......................................................... 29

IV. CONCLUSION ............................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**

*Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240 (1975) ................ 11

*Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991) ..................................... 8, 11

*Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ....... 10, 11, 12, 18

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) ............................................. 20

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................... 11, 16, 17, 25

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................ 10

*Boston & Maine Corn. v. Sheehan, Phinney, Bass & Green, P.A.*,
778 F.2d 890 (1st Cir. 1985) ........................................................................................... 21

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ......................................... 12 n.1, 14

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) .............................. 15, 30

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) ............................. 14 n.2

*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ........................... 14 n.2

*Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan*, 2007 WL
764291 (S.D. Ohio March 9, 2007) ...................................... 4, 10, 12 n.1, 14, 16

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) ............................................... 21

*Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of
Great Northern Paper, Inc.*, 262 F. Supp. 2d 804 (W.D. Mich. 2003) ........................... 27

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D.Tex. 2007) .................................. 18 n.4

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373 (S.D.Fla.
Dec.19, 2001) .................................................................................................................... 22

*Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987) ........................................ 29

*Entertainment Software Ass'n v. Granholm*, Case No. 2:05-cv-73634
(E.D. Mich. Nov. 30, 2006) .............................................................................................. 18

*Florin v. Nationsbank of Georgia*, 34 F.3d 560 (7th Cir. 1994) ............................... 14 n.2

*Fournier v. PFS Invs., Inc.*, 997 F.Supp. 828 (E.D.Mich.1998) ...................................... 13

*Gaskill v. Gordon,* 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd,*
160 F.3d 361 17 (7th Cir. 1998) ...................................................................... 16 n.3

*Goldberger v. Integrated Res. Inc.,* 209 F.3d 43 (2d Cir. 2000) ................................ 14 n.2

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ............................................... 14

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) ......................................... 14 n.2

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ...................................................... 16

*Ilick v. Miller,* 68 F.Supp.2d 1169 (D. Nev. 1999) ............................................ 20

*In re Airline Ticket Commission Antitrust Litig.*, 953 F. Supp. 280
(D. Minn. 1997) ................................................................................... 15 n.3

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) .............................. 22

*In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418
(S.D.N.Y. 2001) ................................................................................... 24

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D.Ohio 2006) ........................ 5, 14

*In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752 (S.D.Ohio 2007) ......... 14 n.2, 21

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508
(E.D. Mich. 2003) ........................................................... 13, 14, 22 n.9, 26, 28

*In re Cendant Corp. Prides Litig.,* 243 F.3d 722 (3rd Cir. 2001) ............................... 5

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J.1999), *vacated
and remanded,* 243 F.3d 722 (3d Cir.2001), *on remand,* No. 98-2819 (D.N.J.
June 11, 2002) .................................................................................... 22

*In re Charter Communications, Inc., Sec. Litig.,* 2005 WL 4045741
(E.D.Mo. June 30, 2005) .......................................................................... 22

*In re CMS Energy ERISA Litig.,* 2006 WL 2109499 (E.D. Mich. June 27, 2006) ........... 14

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) .................................. 15 n.3

*In re Continental Illinois Sec. Litig.*, 962 F.2d. 566 (7th Cir. 1992). ................... 25, 26

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) ............................. 30

*In re Engineering Animation Sees. Litig.*, 203 F.R.D. 417 (S.D. Iowa 2001) ............ 16 n.3

*In re F & M Distributors, Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090
(E.D. Mich. June 29, 1999) ........................................................................... 13

*In re General Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ............... 16 n.3

*In re General Motors Corp. Pick-Up Truck Fuel Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................... 14 n.2

*In re Indep. Energy-Holdings PLC Sec. Litig.*, 2003 WL 22244676
(S.D.N.Y. 2003) ........................................................................................... 18 n.4

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D.Tex. 1999) ........................... 18 n.4

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) ..... 15 2.3

*In re Lucent Technologies, Inc., Sec. Litig.*, 327 F.Supp.2d 426
(D.N.J. July 19, 2004) ................................................................................... 18 n.4

*In re MRRM, P.A.,* 404 F.3d 863 (4th Cir. 2005) ............................................. 15 n.3

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y. 1998) ........................................................................................... 16 n.3

*In re Nord Res. Corp. Sec. Litig.,* 1992 WL 1258516 (S.D.Ohio Dec. 9, 1994) .............. 15

*In re OCA Inc. Sec. & Derivatives Litig.*, 2009 WL 512081
(E.D.La. Mar.2, 2009) ................................................................................. 18 n.4

*In re Prudential Ins. Co. of Amer. Sales Practices Litig.,* 148 F.3d 283
(3rd Cir. 1998) ................................................................................... 10, 12

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 (E.D. Mich.
Dec. 20, 1996) ................................................................................... 13, 15

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ................ 16 n.3, 21

*In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) ........................ 21

*In re RJR Nabisco,* 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............................ 21

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525
(E.D. Pa. 1990) ................................................................................... 15 n.3, 30

*In re Southern Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997),
*rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) ............................................. 15

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005) ............................................ 17

*In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ........... 15, 25

*In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459 (S.D. Ohio 1999),
*rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000) ................................................ 12 n.1

*In re Telik, Inc. Sec. Litg.*, 576 F.Supp.2d 570 (S.D.N.Y. 2008) ............................... 18 n.4

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel
Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) ......................................................... 14 n.2, 15 n.3

*In re U.S. Bancorp. Litig.*, 291 F.3d 1035 (8th Cir. 2002) ......................................... 15 n.3

*In re Washington Public Power Supply Systems Sec. Litig.*, 19 F.3d 1291
(9th Cir. 1994) ............................................................................................................ 14 n.2

*In re Workers' Compensation Ins Antitrust Litig.*, 771 F. Supp. 284
(D. Minn. 1991) ........................................................................................................... 15 n.3

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*,
364 F.Supp.2d 980 (D.Minn. April 8, 2005) ............................................................... 18 n.4

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006). ........................ 27

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) ........................ 14 n.2

*Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350
(E.D. Mich. Sept. 28, 2000) ......................................................................................... 16, 19

*Kogan v. AIMCO Fox Chase, LP*, 193 F.R.D. 496 (E.D. Mich. 2000) ............................ 15

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), *rev'd in
part on other grounds*, 746 F.2d (D.C. Cir. 1984), *cert. denied*, 472 U.S.
1021 (1985) ........................................................................................................................ 19

*Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ................................ 24

*Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268 (6th
Cir. 1983). ............................................................................................................................ 16

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 16 n.3, 22

*Manners v. American General Life Ins. Co.*, 1999 WL 33581944 (M.D.Tenn. Aug. 10, 1999) ................................................................................................. 2, 12, 25

*Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472 (M.D.Pa. March 31, 2008) ................................................................................ 18 n.4

*McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx.730 (6th Cir. 2002) .................. 16

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ....................................................... 20

*New England Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky 2006) ............................................................................................... 15

*Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) ....................................... 16 n.3

*North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. of Transp.*, 168 F.Supp.2d 569 (M.D.N.C. 2001) ........................................................... 17, 19

*Northeast Coalition for the Homeless v. Brunner*, Case No. 2:06-cv-896 (S.D. Ohio Nov. 30, 2010) ............................................................................... 18

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .................... 14 n.2

*Pringle v. Continental Tire North America*, No. 3:06-cv-02985, N.D. Ohio, Order filed Sept. 30, 2008 ................................................................................. 18

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). ................................ 4

*Rankin v. Rots*, 2006 WL 1791377 (E.D. Mich. June 27, 2006) ................ 9-11, 14, 17, 20

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ............................................................................................ 3, 11, 12, 23

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) ............................................... 30

*Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997) ........................................ 21

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................................................................................................ 14 n.2

*Smillie v. Park Chem. Co.*, 710 F.2d 271 (6th Cir. 1983) ........................................ 26, 29

*Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ................................................................................................. 16 n.3

*Steiner v. Hercules, Inc.*, 835 F.Supp. 771 (D.Del. 1993) ........................................ 15 n.3

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .............................. 14 n.2

*UAW v. Chrysler, LLC*, No. 07-14310, E.D. Mich., Order filed May 16, 2008 ............. 18

*UAW v. Ford Motor Co.,* No. 05-74730, E.D. Mich., Order dated Dec. 27, 2007 ......... 18

*UAW v. General Motors Corp.*, No. 05-73991, E.D. Mich., Order dated
Sept. 24, 2007 ................................................................................................... 18

*UAW v. General Motors Corp.*, No. 07-14074, E.D. Mich., Order dated
July 31, 2008 ..................................................................................................... 18

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................... 23

*UAW v. Loral Corp.,* 107 F.3d 11 (table), 1997 WL 49077 (6th Cir. 1997) ..................... 9

*Van Horn v. Nationwide Property and Cas. Ins. Co.*, 2010 WL 1751995
(N.D.Ohio April 30, 2010) ................................................................................... 18

*Varacello v. Mass Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005). ........................... 3

*Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) ................................................ 15 n.3

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) .................... 15 n.3

*Wood v. Detroit Diesel Corp.,* 607 F.3d 427 (6th Cir. 2010) ................................. 4, 23, 27


**STATUTES AND RULES**

29 U.S.C. § 1001(b) .......................................................................................................9
29 U.S.C. § 1132(g)(1) ...............................................................................................8, 9

Fed. R. Civ. P. 23(h) .............................................................................................1, 2, 8, 9
Fed. R. Civ. P. 54(d) ......................................................................................................1

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND EXPENSES

Plaintiffs, Ed Merkner, Thomas E. Rodgers, Peter E. Connor, Jack Kriess and Ed Musko, and Class Counsel, hereby petition the Court for approval of attorney fees and expenses in the amount of $9,100,000.00 (ten percent of the gross cash portion of the settlement herein) pursuant to Fed. R. Civ. P. 23(h) and 54(d) and in accordance with the parties' Hourly and Salaried Class Settlement Agreements (collectively, the "Settlement") as preliminarily approved by the Court on September 24, 2010. (See Order Granting Joint Motion, Doc. 69). The motion is unopposed by Defendant, and the sole objector has withdrawn her objection. The amount of attorney fees (which includes all expenses), is the amount agreed upon between Plaintiffs' counsel and the Class Representatives and is amply supported by the applicable law. Accordingly, Plaintiffs respectfully request that their motion be granted.

## I.     RULE 7.2(a)(3) SUMMARY OF MEMORANDUM

With regard to the statement of facts, the Plaintiffs respectfully direct the Court to their Memorandum in Support of Motion for Final Approval of Settlement, filed contemporaneously herewith, as well as to the contemporaneously filed parties' Stipulated and Agreed-Upon Facts in Support of the Parties' Settlement Agreements, for a detailed summary of the relevant facts and historical chronology of this action.

Specifically as pertains to fees and costs, Plaintiffs describe below how the Plaintiffs' agreement for attorneys' fees in this case in the client retainer agreement provided for recovery of a twenty-five percent (25%) contractually agreed-upon contingent fee, as well as costs and expenses. However, Plaintiffs' counsel voluntarily took a reduction from the 25% contractually agreed-upon contingent fee to a ten percent

(10%) fee. Further, Class Counsel have excluded the monetary value of the continuation of health care benefits which is part of the class settlement, from their calculation of the requested fee. Stated differently, the requested fee represents ten percent of the cash portion of the settlement alone, that is, the amount created by the Voluntary Employees' Beneficiary Association ("VEBA") herein, and does not seek any additional fee based on the monetary value of the other benefits of the Settlement including particularly Defendant's negotiated agreement to continue existing retiree health benefits through the date that the VEBA assumes control of the retiree benefits. In relation to the total Settlement including the value of the continuation of benefits through such time as when the VEBA will take over the provision of retiree healthcare benefits, the requested fee represents only slightly more than five percent of that total Settlement amount.

In addition, included in the requested ten percent fee amount are any and all expenses that have been incurred by Class Counsel in prosecuting the case. That is, Class Counsel do not seek an award of costs and expenses above and beyond their requested ten percent fee. Finally, the ten percent requested fee is also inclusive of any and all fees and expenses going forward over the next several years through the implementation and administration of the settlement, including further work with regard to the VEBA, among other things, which amount of future work is expected to be significant.

In the argument portion of the Memorandum, Plaintiffs first explain that they are petitioning for fees under Rule 23(h), which authorizes an award of fees and costs that result from an agreement of the parties. Under the Rule, the Court must determine if the fee award is reasonable. Courts favor negotiated fee awards in class actions as an "ideal" toward which the parties should strive. *See Manners v. American General Life Ins. Co.,*

1999 WL 33581944, *19 (M.D. Tenn. Aug. 10, 1999) (noting that in evaluating proposed settlement, court should consider the "overriding public interest in favor of settlement of class action lawsuits"). It must be noted that AK Steel has no objection to the fee award that Plaintiffs are petitioning for in this case.

Plaintiffs' fee request is clearly reasonable under a common fund analysis, which is the approach most appropriate for this case. Class Counsel pursuant to the terms of the Settlement Agreements herein have agreed to seek only 10% of the "common fund" consisting of the gross cash amount obtained for the hourly and salaried class of $91,000,000, and no percentage of the benefit of AK Steel continuing to pay benefits for class members through December 31, 2014 which has a value of approximately an additional $87,600,000. Accordingly, the attorneys' fees and costs requested are $9,100,000 (10% of the gross cash portion of the settlement of $91,000,000), subject to Court approval, under a "common fund" analysis.

It is anticipated by the Plaintiffs' actuaries that this amount of money will grow to approximately from $91,000,000.00 to $93,000,000.00 by the time the VEBA fund begins paying for benefits and administering claims on January 1, 2015. (See Coleman Dec.). The payments to the VEBA (after deducting attorneys' fees) will remain intact and be retained exclusively for the use of Class Members. Courts have found that in these circumstances, it is appropriate to apply a common fund analysis. *See, e.g., Varacello v. Mass Mutual Life Ins. Co.*, 226 F.R.D. 207, 248-49 (D.N.J. 2005).

Use of a percentage-of-recovery method is appropriate with regard to common fund fee applications. *See, e.g., Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). Under this approach, the Court is to consider 1) the value of

the benefit rendered to the class, 2) society's stake in maintaining incentives to attorneys to undertake such cases, 3) whether the services were undertaken on a contingent basis, 4) the value of the services, 5) the complexity of the case, and 6) the professional skill and standing of counsel. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In this case counsel secured a substantial benefit for the Class by negotiating an arrangement which will provide a continuing plan of benefits of significant value which is anticipated to last for the lifetimes of the Class Members considering and taking into account actuarial predictions, mortality rates, the demographics of the class group, the Medicare-eligible status of Class Members and market conditions. Moreover, counsel obtained a preliminary injunction which preserved intact a valuable plan of benefits for the affected retiree group for the duration of the litigation and in essence "stopped" any payment by hourly Class Members for their benefits from January 1, 2010 forward. This result is of value to the retirees in that it assures them of health benefits in the future and more broadly, is of societal interest and benefit in protecting retiree health benefits as has been recognized in several cases.

As the Court is aware, the instant action has involved complex factual and legal issues in an uncertain and developing area of the law. *See, e.g., Wood v. Detroit Diesel Corp.*, 607 F.3d 427 (6th Cir. 2010) (reversing lower court ruling in favor of retirees). Assuming this risk, Class Counsel took this case solely on a contingent fee basis, with skilled and capable defense counsel represented AK Steel throughout the litigation and with an aggressive defense predicted and in fact which has occurred. The contingent fee arrangement in this case is considered to favor a fee award under the third *Ramey* factor. *See, e.g., Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan*, 2007 WL 764291,

*2 (S.D. Ohio March 9, 2007). Further, reviewed by comparison to a lodestar analysis, the fee award agreed to by the Class Representatives and unopposed by Defendant appropriately reflects the value of the services provided. Moreover, the sole objector to the settlement has withdrawn her objection, and even that now-withdrawn objection did not particularly object to the fee award of ten percent (10%) of the cash "Common Fund" as explained in the Notice to all Class Members.

This litigation involved multiple procedural and statutory issues, notably under ERISA, a statute the courts have recognized as constituting a complex and highly specialized area of the law. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D.Ohio 2006). Finally, the skill of Class Counsel is readily demonstrated in the attached Declarations and in the result achieved in this settlement.

The requested percentage-of-recovery fee in this case (little more than five percent of the total settlement of $178.6 million and ten percent of the cash portion of the settlement) compares very favorably to the percentage awards in other cases. In fact, in reviewing cases in the Sixth Circuit, percentage-of-fund awards ranging up to thirty-six percent (36%) or more have been approved in the Sixth Circuit and courts around the country with the vast majority of cases being above ten percent (10%). *See, e.g., In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 736-37 (3rd Cir. 2001). As discussed below, the case law reflects that a ten percent contingent fee under these circumstances is eminently reasonable and is well-supported by the law.

## II.    STATEMENT OF FACTS

With regard to the facts of the case in general, the Plaintiffs respectfully direct the Court to their Memorandum in Support of Motion for Final Approval of Settlement, filed

contemporaneously herewith, as well as the parties' Stipulated and Agreed-Upon Facts in Support of the Parties' Settlement Agreements, for a detailed summary of the relevant factual background of this action. Facts specifically relevant to the instant motion for fee approval are provided below.

### A. Benefits Conferred by the Settlement.

The settlement provides four discrete components of benefits, as follows:

- ***Continued health benefits until December 31, 2014 – Hourly Class.*** AK Steel will provide health benefits to hourly class members at its expense at current levels and costs until December 31, 2014 when the VEBA assumes control. The approximate value of this commitment to pay benefits for hourly class members through December 31, 2014 is $84,000,000.

- ***Continued health benefits until December 31, 2014 – Salaried Class.*** AK Steel will provide health benefits to salaried class members at its expense at current levels and costs until December 31, 2014 when the VEBA takes over. The approximate value of this commitment to continue to pay benefits for salaried class members through December 31, 2014 is $3,600,000.

- ***Funding of VEBA for Benefits from January 1, 2015 Onward – Hourly Class.*** In addition to the continued benefits described above, AK Steel will make cash payments totaling a gross cash amount of $86,000,000, inclusive of payments to the VEBA and payment of attorneys' fees and costs. The VEBA trust fund will assume responsibility for providing health benefits to Hourly Class Members and their eligible dependents on January 1, 2015. This cash amount is in addition to the benefit of AK Steel continuing to pay benefits through December 31, 2014 which is approximately $84,000,000. The total value of the Hourly Class Settlement after payment of attorneys' fees and costs is approximately $161,400,000.

- ***Funding of VEBA for Benefits from January 1, 2015 Onward – Salaried Class.*** In addition to the continued benefits described above, AK Steel will make cash payments totaling a gross cash amount of $5,000,000, inclusive of payments to the VEBA and payment of attorneys' fees and costs. The VEBA will assume responsibility for providing health benefits to Salaried Class Members and their eligible dependents on January 1, 2015. This cash amount is in addition to the benefit of AK Steel continuing to pay benefits for salaried class members through December 31, 2014 which is approximately $3,600,000. The total value of the Salaried Class Settlement after payment of attorneys' fees and costs is approximately $8,100,000.

The total value of this settlement is therefore approximately $178,600,000.00. The total amount of attorneys' fee of $9,100,000.00 represents little more than five percent (5%) of this total value of the Settlement and represents only ten percent of the cash portion of the Settlement.

**B.    Provisions of the Client Retainer Agreements; Fee Sought Compared to Overall Size of Settlement.**

Plaintiffs show that the attorneys took this case on a contingent fee basis. In this regard, as noted, Class Counsel agreed to reduce their original 25% contingent fee agreement with the Plaintiffs down to a 10% fee. Further, Class Counsel have agreed to seek only 10% of the gross cash amount obtained of $91,000,000, and no percentage of the benefit of AK Steel continuing to pay benefits for class members through December 31, 2014 which is worth approximately an additional $87,600,000. Accordingly, the attorneys' fees and costs requested are $9,100,000 (10% of the gross cash portion of the settlement of $91,000,000), subject to this Court's approval.

Further, instead of requesting reimbursement of costs apart from the attorneys' fees, Class Counsel have agreed that the ten percent attorneys' fee will also applied to reimburse counsel for the approximately $160,000 in costs that have been funded by Plaintiffs' counsel in the prosecution of this case. In addition, the requested fee will also be applied to cover all future work expected to be required with regard to the instant Settlement, including finalization and implementation of the VEBA contemplated by the Settlement Agreements and other necessary work.

**C.    Lack of Objectors to the Settlement.**

The presence or absence of objectors to the proposed class settlement is a factor for the Court to consider with regard to the fee request. Here, the Class Notice provided

detailed information on how any Class Member who wished to do so, could object to the approval of the settlement or specifically to any part of the settlement terms including the request for fees and costs by mailing his/her objection to the post office box that the class administrator, Garden City Group ("GCG") established specifically for this project, with objections to be postmarked by November 15, 2010. As of December 1, 2010, GCG had received only one objection, which was forwarded by the parties. However, the person who made that objection subsequently submitted a letter stating that she wished to withdraw her objection. Nor did that now-withdrawn objection focus on the fees and costs request. Copies of the objection and the letter stating her desire to withdraw the objection are attached as Exhibit C to the Keough Declaration on behalf of GCG which is filed as an attachment with the Motion for Final Approval. Accordingly, there are no objectors to the Class Action Settlement and pertinently no objectors to the request for fees and costs.

## III.    ARGUMENT

### A.    Bases for Court Authority to Award Fees and Costs.

There are three bases for a fee award. The first is Section 502(g)(1), ERISA'S attorney fee provision. 29 U.S.C. § 1132(g)(1). The second is under Rule 23(h) and the parties' Settlement Agreement. The third is the equitable doctrine of a "common fund" which, generally, "permits the courts to award fees to a party recovering a fund or property for the benefit of others in addition to himself out of the fund or property so recovered." *See Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1301-1302, 1304 (6th Cir. 1991). Each is described in more detail below.

### 1. Fees under ERISA Section 502(g)(1).

ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1), provides in pertinent part: "In any action under this subchapter ... by a participant [or] beneficiary ..., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." This provision serves ERISA's objective "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). *See UAW v. Loral Corp.*, 107 F.3d 11 (table), 1997 WL 49077 at *4 (6th Cir. 1997) ("[O]ur law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly."); *Rankin v. Rots*, 2006 WL 1791377 at *2 (E.D. Mich. June 27, 2006) ("[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.").

### 2. Fees under Fed. R. Civ. P. 23(h).

Rule 23(h) permits the Court to "award reasonable attorney's fees and non-taxable costs that are authorized ... by the parties' agreement." Here, the settlement provides for reasonable fees and expenses approved by the Court payable out of the settlement amount to compensate class counsel for their work, and to reimburse them for expenses advanced, in an amount not to exceed ten percent of the cash part of the settlement. (See Settlement Agreements at Dkt. 64-2 and 64-3). This agreement is found both in the Hourly and the Salaried Class Settlement Agreements.

### 3. Fees under "Common Fund" Approach.

The "common fund" or "common benefit" doctrine is derived from the federal courts' traditional equitable powers to award fees to litigants who benefit others, generally out of the recovery. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ( "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The doctrine has been applied in ERISA cases. *See, e.g., Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan*, 2007 WL 764291, *1 (S.D. Ohio March 9, 2007) ("As this Court noted in an ERISA class action, the common fund method for awarding attorney's fees applies when the parties have settled the case."); *Rankin v. Rots*, 2006 WL 1791377 (E.D. Mich. June 27, 2006) (awarding class counsel fees of 10% of the $11.75 million "common fund" recovery).

Although this case is not precisely a common fund case (as the funds going to pay for attorney fees and costs are to be paid under the Settlement Agreements separate and apart from the money that goes to the VEBA to provide health benefits to the class members), nonetheless these types of ERISA class settlements have been analyzed as "common fund" cases. *See Bailey v. AK Steel Corp.*, 2008 WL 553764, *1 n.2 (S.D. Ohio Feb. 28, 2008) (citing *In re Prudential Ins. Co. of Amer. Sales Practices Litig.*, 148 F.3d 283, 336 (3rd Cir. 1998)).

Courts have reviewed common fund fee applications based on a "percentage of recovery" approach which reviews the fees sought as a percentage of the gross settlement, in light of the facts and circumstances of the case as a whole, and/or under a "lodestar" approach which reviews the time spent by the law firms under adjusted hourly

rates with a "multiplier" accounting for the risk of the case and other factors. The general rule is simply that the request be reasonable under the circumstances. *See Bailey v. AK Steel Corp.*, 2008 WL 553764, *1 (S.D. Ohio) ("Trial courts within the Sixth Circuit have the discretion to calculate an award of attorney fees in common fund cases by using either a percentage of the fund calculation or a lodestar/multiplier approach .... The overriding requirement is that the award 'be reasonable under the circumstances.'") (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-51 (6th Cir. 1993)). The trial court is given the discretion as to what method to use. *Rawlings*, 9 F.3d at 517 ("For the reasons stated, we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances."). Both the "percentage of recovery" and the "lodestar" approaches are discussed in more detail below.

**B. Fees under "Common Fund" – Percentage of Recovery.**

As noted, the "common fund" or "common benefit" doctrine is derived from the federal courts' traditional equitable powers to award fees to litigants who benefit others, out of the recovery. *See Armistead*, 944 F.2d at 1301-1302, citing *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 257 (1975). The doctrine has often been applied in ERISA cases. *See, e.g., Rankin*, 2006 WL 1791377 (awarding class counsel fees of 10% of the $11.75 million recovery in an ERISA case). Under the percentage of recovery approach, the court evaluates the fee request as a percentage of the recovery achieved on behalf of retirees. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' ... a reasonable fee is based on a percentage

of the fund bestowed on the class"). Many courts have found that for class action common fund settlements, "a percentage of recovery calculation [is] the most appropriate measure of the attorneys' fee award." *Bailey v. AK Steel Corp.*, 2008 WL 553764, *1 n.2 (S.D. Ohio Feb. 28, 2008) (citing *In re Prudential Ins. Co. of Amer. Sales Practices Litig.*, 148 F.3d 283, 336 (3rd Cir. 1998)).

In the Sixth Circuit, the trial court is given the discretion as to what method to use and the percentage of recovery method has been specifically listed as an appropriate approach. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) ("For the reasons stated, we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances."). Since *Rawlings*, numerous courts in this Circuit have used the percentage of the fee method in awarding fees in common fund cases.[1]

Discussing why the percentage of fund measure is preferred, the court in *Manners* noted that calculating attorney fees as a percentage of the class benefit "is consistent with the private marketplace where contingent fee attorneys are routinely compensated on a percentage of recovery method." 1999 WL 33581944, *29. Further, "it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances." *Id.*

---

[1] *See, e.g., Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan*, 2007 WL 764291, *2 (S.D. Ohio March 9, 2007) ("The Court finds that it is appropriate to award Class Counsel a percentage of recovery fee in this litigation." Court awarded fees in the amount of 29% of gross settlement fund in ERISA pension case); *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999) ("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"), *rev'd on other grounds,* 221 F.3d 870 (6th Cir. 2000); *Manners v. American General Life Ins. Co.*, 1999 WL 33581944, *29 (M.D.Tenn. Aug. 10, 1999) ("The preferred approach to calculating attorneys' fees is to be awarded in a common benefit case is as a percentage of the class benefit."); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (district court awarded class and special counsel 10% of the $102.5 million that has been paid into the common fund).

*See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich.

2003). There, the Court pertinently noted as follows:

> In *Rawlings*, the Sixth Circuit observed that the recent trend has been towards application of a percentage-of-the-fund method in common fund cases. *See id.* As recognized by this Court in Order No. 49, courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases. *See, e.g., In re F & M Distributors, Inc. Sec. Litig.*, Case No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) (choosing percentage-of-the-fund as the better method for determining attorneys' fees in a securities class action); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, *16 (E.D.Mich. Dec.20, 1996) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *Fournier v. PFS Invs., Inc.*, 997 F.Supp. 828, 832-33 (E.D.Mich.1998) (choosing percentage-of-the-fund method in class action securities litigation). In *Fournier*, the court observed that:
>
>> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases.... [M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.
>
> *Id.* at 831-32 (internal citations omitted).
>
> This Court agrees, as it did in Order No. 49, with Judge Cook's observations in *F & M Distribs. Inc. Sec. Litig.*, that (1) "the lodestar method is too cumbersome and time-consuming of the resources of the Court"; and (2) "more importantly, 'percentage of the fund' approach more accurately reflects the result achieved." 1999 U.S. Dist. LEXIS 11090, at *8 (internal quotes and citations omitted). This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend, and, more importantly, is reasonable under the circumstances presented here.

Applying this analysis, the Court went on to find that "[a]pplying the percentage of the fund approach, this Court finds that the requested fee in the amount of 17% of the Settlement Fund is fair and reasonable in light of the complex legal and factual

difficulties and substantial procedural difficulties presented in this litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532. The Court concluded that "[t]he requested 17% fee is well within the 20-30% range of reasonable attorneys' fees generally awarded in this Circuit." *Id.*[2]

Here, as noted, Class Counsel seek only a ten percent contingent fee and only of the cash portion of the overall settlement. The amount requested compares favorably to other cases in which attorneys' fees have been awarded. *See, e.g., In re CMS Energy ERISA Litig.*, 2006 WL 2109499, *3 (E.D. Mich. June 27, 2006) (Court awarded class counsel fees totaling 28.5% of the $28 million settlement fund); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) ("[T]he district court awarded class and special counsel 10% of the $102.5 million that has been paid into the common fund to date, an immediate award of $10.25 million plus expenses."); *Clevenger*, 2007 WL 764291, *2 (S.D. Ohio March 9, 2007) (court awarded fees in the amount of 29% of gross settlement fund in ERISA pension case); *Rankin*, 2006 WL 1791377 (E.D. Mich.) (awarding class counsel fees of 10% of the $11.75 million recovery in an ERISA case); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D.Ohio 2006) (request for award of attorney fees on

---

[2] Numerous courts outside the Sixth Circuit have also noted that attorneys' fees may be awarded out of a common fund based on a percentage of fund calculation. In fact "[a]t least two circuits have mandated ... the percentage approach in common fund cases." *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 762 (S.D.Ohio 2007) (citing cases); *see In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 304-08 (1st Cir. 1995); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re General Motors Corp. Pick-Up Truck Fuel Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 565-66 (7th Cir. 1994); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Washington Public Power Supply Systems Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (the Tenth Circuit reversed a District Court decision not to adopt a special master's fee award based on the percentage of the fund method, making clear that although either the percentage or the "lodestar" method can be used in appropriate cases, the percentage approach is preferred); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (requiring use of percentage method); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993) (same).

a common fund basis in the amount of 23% of the settlement was reasonable); *In re Nord Res. Corp. Sec. Litig.*, 1992 WL 1258516 (S.D.Ohio Dec. 9, 1994) (30% plus expenses); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, *16 (E.D. Mich. Dec. 20, 1996) (noting that fee awards in common fund cases typically range from 20% to 50% of the fund); *Kogan v. AIMCO Fox Chase, LP*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (attorney fees of approximately 30% of the common fund); *New England Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky 2006) (25% of total settlement funds); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that "range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 1029, 1042 (S.D. Ohio 2001) ("Generally, in common fund cases, the fee percentages range from 10 to 30 percent (10%-30%) of the common fund created."); *In re Southern Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) (noting that "the requested amount represents approximately 34% of the total amount of the common fund" and that "the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund.").[3]

---

[3] Outside the Sixth Circuit, *see In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 383 (D.D.C. 2002) (fee awards normally are approximately twenty to thirty percent of overall fund); *In re MRRM, P.A.*, 404 F.3d 863 (4th Cir. 2005) (fee request of 28.75% of common fund awarded as class counsel fees); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035 (8th Cir. 2002) (attorney fee of 36% of common fund); *Waters Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (33-1/3% of total recovery); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) (attorney fee award of approximately 31% of common fund settlement affirmed); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (attorney fee of 36% of settlement); *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002) (class action; the rule of thumb is that an award of fees of 25% to 30% is generally appropriate); *In re Airline Ticket Commission Antitrust Litig.*, 953 F. Supp. 280, 285-86 (D. Minn. 1997) (awarding one-third attorney fee from common fund settlement); *In re Workers' Compensation Ins. Antitrust Litig.*, 771 F Supp 284, 287 (D. Minn. 1991) (approving a fee of 22.5%); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F.Supp. 525, 534 (E.D.Pa. 1990) (25% of common fund); *Steiner v. Hercules, Inc.*, 835 F.Supp. 771, 791 (D.Del. 1993) (awarding 24.5% of common fund); *In re*

**B.     Fees under "Common Fund" – "Lodestar."**

The requested fee may be justified under the "percentage of fund" analysis alone. *See Clevenger*, 2007 WL 764291, *2 (S.D. Ohio March 9, 2007) (court awarded fees in the amount of 29% of gross settlement fund in ERISA pension case, performing percentage of fund analysis). However, Class Counsel show that the fee request is also supported under a "lodestar approach," which generally involves "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350, *5 (E. D. Mich. Sept. 28, 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "reasonable hourly rate" is determined by reference to the "prevailing market rates in the relevant community." *Jordan* at *5 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). In ascertaining the proper "community," district courts may "look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx.730, 740 (6th Cir. 2002); *see also Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). This is especially appropriate in areas of practice such as complex class action cases, where the nature of the law is specialized,

---

*Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 735 (E.D.Pa. 2001) (citing affidavit of Professor John C. Coffee, Jr. of Columbia University Law School, in which 289 class action settlements are compiled ranging from under $1 million to $50 million; average attorneys fees percentage is 31.71% and median is one-third); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) (finding that awards in class action settlements typically range from 20-30% with a benchmark of 25%); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding one third of Settlement Fund); *In re General Instr. Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (one third*); In re Engineering Animation Secs. Litig.*, 203 F.R.D. 417, 424 (S.D. Iowa 2001) (one third); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (one third); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (awarding fees of 36%); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (38% of settlement fund), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, *4 (M.D.N.C. Jan. 10, 2007) (26% of the cash recovery obtained by the Class).

the cases are more complicated and time-consuming, and there may be substantial costs and a greater risk in pursuing the case.

Ascertaining the "prevailing market rates in the relevant community," involves consideration of experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are "fairly compensated for the amount of work done and the results achieved" and "that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *Rankin* at *1-2.

The Court has authority to award fees at the "prevailing market rates" for attorneys of comparable experience. *See Blum v. Stenson*, 465 U.S. 886, 895-896 (1984) ("reasonable fees" are "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"; rejecting a "cost-based standard" and awarding market rate fees to attorneys employed by a legal aid organization); *North Carolina Alliance for Transp. Reform v. U.S. Dept. Of Transp.*, 168 F. Supp.2d 569, 581 (M.D.N.C., 2001) (awarding fees at the "market rate" because "[t]o award reduced fees because of the arrangement between Plaintiffs and Plaintiffs' counsel would eliminate any incentive for Plaintiffs' counsel to take [environmental] cases at a reduced rate and would potentially prevent Plaintiffs' counsel from accepting this type of case in the future.").

A measure of reasonable rates is provided by awards in other cases within the Sixth Circuit which have approved hourly rates of upwards of $500/hour for purposes of making these calculations. *See In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (noting that district court applied rates ranging from $200 to $500/hour);

*Bailey v. AK Steel*, 2008 WL 553764, *3 (applying "lodestar" rates of $100 to $450 per hour); *Pringle v. Continental Tire North America*, No. 3:06-cv-02985, N.D. Ohio, Order filed Sept. 30, 2008 (Dkt. 164 and 137 of same) (ERISA class, approving hourly rates ranging from $375 to $475/hour for attorneys and $125/hour for paralegals); *UAW v. Chrysler, LLC*, No. 07-14310, E.D. Mich., Order filed May 16, 2008 (approving hourly rates ranging from $230 to $475/hour for attorneys and $125/hour for paralegals); *UAW v. General Motors Corp.,* No. 07-14074, E.D. Mich., Order dated July 31, 2008 (hourly rates ranging from $230 to $475/hour for attorneys and $125/hour for paralegals); *UAW v. Ford Motor Co.*, No. 05-74730, E.D. Mich., Order dated Dec. 27, 2007 (rates ranging from $375 to $450/hour for attorneys and $90/hour for paralegals); *UAW v. General Motors Corp.*, No. 05-73991, E.D. Mich., Order dated Sept. 24, 2007 ($375 to $450/hour for attorneys); *Van Horn v. Nationwide Property and Cas. Ins. Co.*, 2010 WL 1751995, *4 (N.D.Ohio April 30, 2010) (hourly rate for lead counsel of $450); *Northeast Coalition for the Homeless v. Brunner*, Case No. 2:06-cv-896 (S.D. Ohio Nov. 30, 2010) ($280 to $400/hour); *Entertainment Software Ass'n v. Granholm*, Case No. 2:05-cv-73634 (E.D. Mich. Nov. 30, 2006) ($165 to $585/hour).[4]

Here, both sides are represented by counsel from the community of lawyers who litigate in the complex and specialized context of federal labor law, ERISA benefits law,

---

[4] Outside of the Sixth Circuit, *see DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 325 (W.D.Tex. 2007) (hourly rates of between $350 and $550 for class counsel); *In re OCA Inc. Sec. & Derivatives Litig.*, 2009 WL 512081, *25 (E.D.La. Mar.2, 2009) ($400 to $450 per hour); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 (S.D.Tex.1999) (approving up to $544 per hour); *Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472 (M.D.Pa. March 31, 2008) (rates ranging from $335 to $550 per hour); *In re Indep. Energy-Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *9 (S.D.N.Y. 2003) (hourly rates from $300 to $650/hour); *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 588-89 (S.D.N.Y. 2008) (hourly rates of $300 to $750); *In re Lucent Technologies, Inc., Sec. Litig.*, 327 F.Supp.2d 426, 443 (D.N.J. July 19, 2004) ("The Court multiplies the number of hours devoted to the case by the average rates of the most senior lawyers from each of the Lead Counsel firms, which is $672.50 per hour, to arrive at a lodestar fee of $41,260,565."); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 991 (D.Minn. April 8, 2005) (applying hourly rates of $250 to $585 per hour).

and class actions in Ohio, Tennessee, North Carolina and nationally. The qualifications and experience of Plaintiffs' lead counsel are detailed in the Declarations of Gregory F. Coleman and Mona Lisa Wallace, filed herewith. Both Mr. Coleman and Ms. Wallace have over 20 years of experience, have won noted results in high-profile cases, and have received numerous honors and accolades.[5]

Accordingly, Plaintiffs respectfully suggest that for purposes of the lodestar analysis that hourly rates of $475/hour be applied for the senior attorneys Gregory F. Coleman, Mona Lisa Wallace and William M. Graham, $450/hour for attorneys Mr. Schwaba and Mr. Hughes, $200/hour for Mr. Goss and $100/hour for paralegals and specialized staff.

These rates for purposes of the lodestar analysis take into account the fact as well that under the "Laffey Matrix," which is another noted authority for fee-setting, the current hourly rates for attorneys such as Mr. Coleman, Ms. Wallace and Mr. Graham would be $709/hour, for Mr. Schwaba and Mr. Hughes over $500/hour, and for paralegals over $160/hour. *See* Laffey Matrix, one version of which is available at www.laffeymatrix.com, a copy of which is attached to Ms. Wallace's Declaration as Exhibit B thereto; *see generally Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), *rev'd in part on other grounds*, 746 F.2d (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985); *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350, *6 (E.D. Mich. Sept. 28, 2000) (noting Laffey Matrix); *North Carolina*

---

[5] Likewise, Defendants selected specialized counsel from Taft Stettinius & Hollister LLP, a large law firm with offices in Cincinnati, Cleveland, Columbus, Dayton, Indianapolis, Northern Kentucky, Phoenix as well as Beijing, China. As described on that law firm's website, http://www.taftlaw.com/, the firm has more than 300 attorneys and legal professionals, has a large Labor and Employment practice area as well as a large Litigation practice group, and as the Court is aware the defense was led by senior Taft attorney Gregory Rogers.

*Alliance for Transp. Reform, Inc. v. U.S. Dept. of Transp.*, 168 F.Supp.2d 569, 579 (M.D.N.C., 2001) (reviewing Laffey Matrix rates); *Ilick v. Miller*, 68 F.Supp.2d 1169, 1176 (D. Nev. 1999) (same).

Furthermore, courts have stated that it may be relevant to review the hourly rates charged by defense firms during the relevant times. The suggested rates are within the range of rates charged by large defense law firms.[6] Finally, the rates are within the range previously approved by other courts for Class Co-Counsel in prior class actions.[7]

The setting of reasonable hourly rates is appropriate to ensure "that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *Rankin* at *2. The Court may approve fees computed on current rates to adjust for the delay in compensation because the fees will be "received several years after services were rendered." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005), citing *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989).

The Declarations of Mr. Coleman and Ms. Wallace submitted herewith reflect that the law firms have incurred over 1600 and over 1440 hours of work to date,

---

[6] Here, during 2008, for example, the North Carolina-based law firm of Moore & Van Allen charged up to $770/hour according to the National Law Journal 2008 sample, while the North Carolina-based law firm of Womble Carlyle charged up to $750/hour according to the sample. (See Wallace Dec. Ex. C). Co-Counsel Wallace and Graham is based in North Carolina. Likewise, the Baker Donelson law firm based in Tennessee charged up to $525/hour and the Bass, Berry & Sims law firm based in Tennessee charged up to $575/hour in 2008. (Id.). Co-Counsel Mr. Coleman is based in Tennessee. Likewise, the Frost Brown Todd firm in Ohio charged up to $490/hour, the Roetzel & Andress firm charged up to $500/hour, Shumaker, Loop & Kendrick charged up to $500/hour, and Thompson Hine charged up to $740/hour in 2008. (Id.). The instant venue is of course Ohio.

[7] On February 5, 2010, The Honorable John O. Craig, III, North Carolina Special Superior Court Judge, approved Wallace and Graham's fee petition in the *Hendrick* class action with hourly rates of up to $475/hour. (See Wallace Dec. Ex. D). On September 7, 2007, The Honorable William L. Osteen, United States District Judge for the Middle District of North Carolina, approved the firm's fee petition in the *Kosa* class action (a retiree benefit class action) with hourly rates of up to $495/hour. (See Wallace Dec. Ex. E).

respectively. Applying the hourly rates proposed would yield a total figure of $722,500

for Mr. Coleman's firm and $576,967 for Ms. Wallace's firm. In addition, Class Counsel

estimate that between the two firms, up to an additional 1,000 hours of time will be

expended in order to finalize the VEBA Trust agreement, meet with clients and VEBA

Trustees and establish the VEBA account and otherwise assist the Plaintiffs through the

multi-year period of the settlement. Applying an average rate of $400/hour for this

anticipated work yields a lodestar figure of $400,000 for future work. The grand total

lodestar figure inclusive of all of the above amounts would be $1,699,467.[8]

In light of the $9.1 million sought, and the lodestar figure of $1,699,467, the

"lodestar multiplier" would be 5.3. This multiplier falls within the range approved by the

courts. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767

(S.D.Ohio 2007) (awarding 18% of the settlement, or $108 million, representing a

lodestar multiplier of 5.9); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44

(E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier

"unquestionably reasonable"); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587, 589

(E.D. Pa. 2005) (lodestar multiplier on the fee ultimately awarded was 6.96); *In re RJR

Nabisco*, 1992 WL 210138, *5-6 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Cosgrove v.

Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (fee representing a multiplier of

8.74); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890,

894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 200

---

[8] Counsels' voluminous detailed hourly records are available for the Court's review upon request, however, the Court may simply rely upon declarations of counsel for purposes of engaging in a lodestar "cross-check" analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767 (S.D.Ohio 2007) ("In contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Citation omitted). Should the Court wish to review the hundreds of pages of time records, Class Counsel will submit those records for *in camera* review (these records contain information that is protected by the attorney-client and work product privileges).

(S.D.N.Y. 1997) (multiplier of 5.5); *In re Charter Communications, Inc., Securities Litigation*, 2005 WL 4045741, *18 (E.D.Mo. June 30, 2005) ("The requested fee of 20% of the $146,250,000 recovery equates to a multiplier of 5.61 based on the lodestar to date. This falls within the range of multipliers found reasonable for cross-check purposes by courts in other similar actions, and is fully justified here given the effort required, the hurdles faced and overcome, and the results achieved."); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (awarding 28% of a $194 million settlement that resulted in a lodestar multiplier of 4.3); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002) (approving percentage fee that resulted in a multiplier of 5.28); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 371 (S.D.N.Y.2002) (percentage fee resulted in a "modest multiplier of 4.65"); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10-11 (S.D.Fla. Dec.19, 2001) (approving percentage fee that resulted in multiplier of 5.3).[9]

Accordingly, Class Counsel respectfully show that the amount of fees and costs requested is reasonable in the alternative based upon the above "lodestar" analysis.

---

[9] Further, Class Counsel's ten percent fee request is inclusive of all costs expended or to be expended herein. The parties' submissions reflect that Mr. Coleman's firm has incurred in excess of $8,500 in costs and expenses to date, while Ms. Wallace's firm has incurred approximately $159,503.79 in costs and expenses to date. Total costs for the two firms are accordingly $168,003.79. Expense awards are customary where class counsel has created a common fund for the benefit of the class. *In re Cardizem*, 218 F.R.D. at 534. "[U]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *Id.* Accordingly, Class Counsel's requested reimbursement for expenses is properly included in their ten percent fee request.

**D.      Analysis of Fees under the *Rawlings* Factors.**

In evaluating the reasonableness of the requested amount of attorneys' fees, under either the percentage of the fund or the lodestar/multiplier method, the Sixth Circuit has set forth six factors to be considered: (1) the value of the benefit achieved for the plaintiff class; (2) the value of the attorneys' services; (3) whether counsel undertook the services on a contingent fee basis; (4) the public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the action; and (6) the professional skill and standing of all counsel involved. *Rawlings,* 9 F.3d at 516-17. All of these criteria support approving the requested fee award.

*1.      Benefit Achieved for the Plaintiff Class.*

The actual benefit conferred by Plaintiffs' Counsel on the Class is substantial, in light of the special circumstances of this case.   Defendant vigorously denied any wrongdoing.  The claims in this case were sharply disputed and the briefs and hearings in the case reflect that bona fide disputes on the facts and law existed among the parties. *See UAW v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) ("The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute.").

By settling the case, the Plaintiffs eliminated the risk that Defendant could potentially win on the merits and accordingly unilaterally reduce or eliminate the retiree benefit plan.  At the time of the settlement, Defendant had appealed the Court's order granting Plaintiffs' motion for a preliminary injunction to the Sixth Circuit Court of Appeals.  This area of the law is a developing area with mixed decisions at the appellate level. *See, e.g., Wood v. Detroit Diesel Corp.,* 607 F.3d 427 (6th Cir. 2010) (reversing lower court ruling in favor of retirees).  Accordingly, the settlement benefits the class by

obtaining substantial benefits for the class while avoiding the risks of continued litigation. *See In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001) ("while Plaintiffs believe that their claims are meritorious, the fairness and reasonableness of the proposed Settlement in light of the risks, burdens and uncertainties of continued litigation are manifest"); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

The Hourly and Salaried Settlement Agreements describe the parties' sharply opposed respective positions, the parties' recognition of the risks they each faced in proceeding with the litigation, and the reasonable basis for their Settlement herein. AK Steel took the position that it has the right to make the proposed changes to post retirement health benefits for retirees under the applicable collective bargaining agreements and insurance plan documents. (See Hourly Settlement Agreement, §§ 4-5). Plaintiffs claimed, on the other hand, that the class members earned their post-retirement health benefits through many years of service and that the benefits were vested. (See id. at §§ 4, 6). In the Settlement, both parties acknowledged the problems of proof in establishing their claims and defenses, the inherent uncertainty and risks of litigation, and the expense and delays that would be involved in continuing to litigate their dispute. (See id. at §§ 5-6). In the face of the obstacles that remained to succeeding with the case on the merits and the formidable and determined opposition of Defendants, Class Counsel respectfully submit that they have conferred a substantial benefit upon the Class.

### 2. *The Value of Plaintiffs' Counsel's Services.*

Absent a class action, small individual claimants would lack the resources to litigate a case of this magnitude. "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *Telectronics*, 137 F. Supp. 2d at 1043. The settlement confers benefits on the Class now, without the risks and delays of further litigation. Furthermore, the terms of the settlement reflect the high value of Class Counsel's services insofar as counsel were able to obtain such a beneficial result.

The percentage fee sought here is consistent with practice in the private marketplace where attorneys typically negotiate percentage-based fee agreements with their clients, although in fact it is a lesser percentage than is typically specified in a retainer agreement. "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In non-class contingent litigation, one-third contingency fees are the norm. *Blum*, 465 U.S. at 903 n.* (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.... [T]he fee is directly proportional to the recovery."); *Manners v. American General Life Ins. Co.*, 1999 WL 33581944, *29 (M.D.Tenn. Aug. 10, 1999) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery") (citation omitted). Accordingly, this factor is satisfied.

### 3.     *Counsel Undertook Action on a Contingent Fee Basis.*

The contingent fee contract in this case provided that Plaintiffs' counsel would receive twenty-five percent (25%) of a total award and Plaintiffs' counsel assumed a substantial risk of nonpayment.  As detailed above, courts widely have held that, in common fund cases, the trial court should recognize the risk of nonpayment and compensate reasonably for it. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992).

Unlike counsel for the Defendants, who are presumably paid hourly rates and reimbursed for their out-of-pocket expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of their time or expenses over the many months that have passed since the initiation of the Action. Moreover, Plaintiffs' Counsel would not have been compensated for their time at all and would not have been able to recover the expenses that they incurred had they been unsuccessful in this action.

Counsel who take on complicated class litigation on a contingency basis should be rewarded because they do so "bearing the risk of recovery inherent in litigation" and can spend potentially millions of dollars in attorney time and expenses in prosecuting the litigation with the real risk that will never be compensated. *In re Cardizem*, 218 F.R.D. at 533; *Smillie v. Park Chem. Co.*, 710 F.2d 271. 275 (6th Cir. 1983). Counsel's willingness to bear such risk benefits society as it encourages plaintiffs without resources to come forward and have an ability to enforce their rights. Class Counsel undertook the Litigation on a contingency basis fully cognizant of the substantial risk they would incur and the significant investment of time and resources that would be required.

The risk of non-payment here was very real and substantial, and further confirms that the fees requested are fair and reasonable. *See Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the high fees"; also noting that "the appearance of Plaintiffs counsel in this case precluded Plaintiff's counsel from engaging in other lucrative work"). Settlement was reached only while the case was on appeal.

If settlement had not been reached, Plaintiffs' Counsel would have had to confront the formidable tasks of prevailing on appeal; establishing liability at trial as to Defendant; establishing the Class' right to relief under ERISA and any other applicable law; overcoming Defendants' defenses; and winning any further appeals.  Plaintiffs' Counsel could have continued to prosecute this case for many additional years and ultimately recovered nothing for the Class.  *See Wood*, 607 F.3d 427 (6th Cir. 2010) (reversing district court decision in favor of retirees and holding in favor of employer). Instead, despite the risks faced and the determined opposition by experienced and highly respected defense counsel, and in spite of serious legal and factual hurdles, Plaintiffs' Counsel successfully secured a substantial recovery for the Class.

### 4.     The Public Interest Supports the Requested Fee.

Important public policy considerations also support the requested attorneys' fees. Private lawsuits, such as this, are essential to effectuate the federal pension laws' vital remedial purposes of protecting retirees and ERISA beneficiaries.  Furthermore, courts have noted "the general federal policy favoring the settlement of class actions." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006).

Society has a stake in rewarding Class Counsel for the benefits it procured for the Hourly and Salaried Classes herein. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *In re Cardizem*, 218 F.R.D. at 534. It is important to adequately compensate counsel who undertake such litigation in order to provide incentive for others to face the risks and follow suit. *Id.* at 533.

### 5. *Fee Reasonable Considering Complexity of Action.*

This was a complex and demanding case involving a great deal of work. The work done by Class Counsel included extensive investigation, compilation and review of voluminous documents and information, and analysis of agreements, communications, labor negotiation history, and corporate transactions spanning many years and involving numerous retirees. Class Counsel engaged in extensive communications with class representatives and witnesses, and analyzed legal issues involving ERISA and retiree benefits, labor contract interpretation, venue, class certification, damages, and other issues. Class Counsel worked on extensive research and briefing regarding a substantial body of complex law and applying that law to decades of contracts, insurance booklets, SPDs and other history, developed in interviews, depositions, and exhibits, and addressed in oral arguments and conferences, briefing, and negotiations. (See Declarations of Gregory F. Coleman and Mona Lisa Wallace, filed herewith).

Class Counsel also engaged in substantial efforts in negotiating the settlement and researching, designing, and drafting the necessary documents, including the Hourly and Salaried Settlement Agreements and the VEBA trust agreement. (See id.). Retiree benefits class action cases addressing decades of collective bargaining history are labor-

intensive and Class Counsel's recorded hours reflect only part of the effort needed to prosecute and resolve Plaintiffs' case. The totals do not include much of the time put in by Class Counsel in preliminary work-up of the case, and do not include numerous hours of work by professional staff.

### 6. *Fee is Supported by Counsel's Demonstrated Skill.*

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Those special skills were called upon here, given the complexities and difficulties of this action. This settlement represents a favorable result for the Class, attributable to the diligence, determination, hard work, and reputation of Plaintiffs' Counsel. The action was vigorously contested, and Defendants were represented by highly regarded lawyers. The quality of opposing counsel is important in assessing the quality of the services rendered by Plaintiffs' Counsel. *See Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir. 1983) (evaluating "the professional skill and standing of counsel involved on both sides"). The ability of Plaintiffs' Counsel to obtain this settlement for the Class in the face of formidable legal opposition further demonstrates the superior quality of the legal services provided.

### 7. *Lack of Objections to the Requested Fee.*

The Notice notified the Class that Plaintiffs' Counsel intended to apply for an award of attorneys' fees of 10% of the cash portion of the common fund. Members of the Class were informed that they could object to the amount of attorneys' fees or expenses requested. The deadline for objecting to the Settlement has passed and the sole objection to the settlement was withdrawn. The lack of objections is strong evidence of the

acceptability of a fee request. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327

(E.D.N.Y. 1993); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 907 (S.D. Ohio 2001);

*Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong

evidence of the propriety and acceptability" of fee request); *In re SmithKline Beckman*

*Corn. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (same).

## IV.    CONCLUSION

For each and all of the foregoing reasons, Plaintiffs respectfully request that the

Court grant their motion for approval of their request for attorneys' fees and costs.

Dated: December 20, 2010.                  RESPECTFULLY SUBMITTED,


s/Gregory F. Coleman, Esq.
Gregory F. Coleman, Esq.
Greg Coleman Law PC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37903
BPR No. 014092
(865) 247-0080 (phone)
greg@gregcolemanlaw.com

s/Mona Lisa Wallace, Esq.
Mona Lisa Wallace, Esq.
John Hughes, Esq.
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Admitted Pro Hac Vice
Attorneys for Plaintiffs

Marc G. Pera
Ohio Bar No. 69231
The Moore Law Firm
1060 Nimitzview Dr., Suite 200
Cincinnati, Ohio 45230
(513) 232-2000 (phone)
mpera@moorelaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND EXPENSES was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: December 20, 2010

<div style="margin-left:40%">

s/Mona Lisa Wallace, Esq.
Mona Lisa Wallace, Esq.
John Hughes, Esq.
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Admitted Pro Hac Vice
Attorneys for Plaintiffs

</div>