UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ED MERKNER, THOMAS E. RODGERS, PETER E. CONNOR, JACK KRIESS and ED MUSKO, on behalf of themselves and others similarly situated, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| vs. ) | CASE NO. 1:09-CV-423-TSB |
| ) ) | CLASS ACTION |
| AK STEEL CORPORATION, ) ) | |
| Defendant. ) | |

## ORDER GRANTING THE PARTIES' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

Plaintiffs and class representatives Ed Merkner, Thomas E. Rodgers, Peter E. Connor, Jack Kriess and Ed Musko, and Defendant AK Steel, by their respective counsel, have moved the Court under Fed. R. Civ. P. 23 for final approval of the parties' Settlement Agreements preliminarily approved by the Court on September 24, 2010 (Dkt. 69) and for withdrawal of the sole objection pursuant to the objecting class member's request to withdraw said objection. The Court having considered the motions and the related submissions accompanying the motions and being otherwise advised, hereby grants the motions and finds and orders as follows:

1. The Sixth Circuit has established a three-step procedure for approval of a settlement agreement. *See Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983). "The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons. Finally, the court must decide whether the settlement agreement is reasonable after having held a hearing." *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1276, 1279 (N.D. Ohio 1987).

2. Under Fed. R. Civ. P. 23(e), a class action settlement may be finally approved upon the court's finding that it is fair, reasonable, and adequate. "In making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (noting the "strong presumption" in favor of settlement).

3. Several factors guide the inquiry of this Court, including the likelihood of success on the merits and the results obtained, risk of fraud or collusion, the complexity,

1

expense, and likely duration of the litigation, the amount of discovery engaged in by the parties, the opinions of class counsel and class representatives, the reaction of absent class members, and the public interest. *See UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Hainey v. Parrott*, 2007 WL 2752375, at *3 (S.D. Ohio 2007). In this case, the settlement has been preliminarily approved, notice has been provided, and the only objection received has been withdrawn. As discussed below, the settlements for the hourly and salaried classes provide value to the classes and meet all the criteria for final approval. Accordingly, final approval of the settlements is justified. Reviewing the pertinent factors:

4. Likelihood of success/results obtained: The claims in this case were sharply disputed and the Court finds that bona fide disputes on the facts and law existed among the parties. *See UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute."). The Court finds that weighing "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement," the settlements herein represent an excellent result for the class members. *See id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Based on the uncertainty of Plaintiffs' claims, and the complexity and magnitude of the litigation, the settlements confer a substantial benefit on the hourly and salaried class members.

5. By settling the case, the Plaintiffs eliminated the risk that Defendant could potentially win on the merits and accordingly unilaterally reduce or eliminate the retiree benefit plans. At the time of the settlements, Defendant had appealed the Court's order granting Plaintiffs' motion for a preliminary injunction to the Sixth Circuit Court of Appeals. The Court notes that this area of the law is a developing area with mixed decisions at the appellate level. *See, e.g., Wood v. Detroit Diesel Corp.*, 607 F.3d 427 (6th Cir. 2010) (reversing lower court ruling in favor of retirees). Accordingly, the settlements herein benefit the class by obtaining substantial benefits for the class while avoiding the risks of continued litigation.

6. The Hourly and Salaried Settlement Agreements describe the parties' sharply opposed respective positions, the parties' recognition of the risks they each faced in proceeding with the litigation, and the reasonable basis for their settlements herein. AK Steel took the position that it has the right to make the proposed changes to post-retirement health benefits for retirees under the applicable collective bargaining agreements and insurance plan documents. (*See* Hourly Settlement Agreement, §§ 4-5). Plaintiffs claimed, on the other hand, that the class members earned their post-retirement health benefits through many years of service and that the benefits became vested upon their retirement. (*See id.* at §§ 4, 6). In the hourly and salaried class settlements, both parties acknowledged the problems of proof in establishing their claims and defenses, the inherent uncertainty and risks of litigation, and the expense and delays that would be involved in continuing to litigate their dispute. (*See id.* at §§ 5-6).

7. The settlements represent a significant benefit to the class. Under the hourly settlement, AK Steel will continue to pay the current health and life insurance benefits for Hourly Class Members through 2014, at an estimated cost of more than

eighty-four million dollars ($84,000,000.00) (Hourly Settlement Agreement, § 7.2.1). AK Steel will also make cash payments for the benefit of the hourly class totaling eighty-six million dollars ($86,000,000.00) beginning in 2011 to be divided between a Voluntary Employees Beneficiary Association ("VEBA") and to pay attorney fees and costs. (*See id.* at § 7.2.2). The funds paid to the VEBA will be used to provide welfare benefits to Hourly Class Members beginning in 2015 under a new and revised plan of benefits to be created by trustees of the VEBA selected according to a procedure established by the Plaintiffs. (*Id.* at § 9.1.1). In addition, under the salaried settlement, AK Steel will continue to pay current health and life insurance benefits for Salaried Class Members through 2014, at an estimated cost of $3.6 Million. AK Steel will also pay a total of $5,000,000 to be divided between the VEBA and for attorney fees and costs. (*See* Salaried Settlement Agreement).

8. Considering the relative merits of the case and the complexity, cost and uncertainty of this litigation, the Court finds that the hourly and salaried settlements represent an excellent result for the class members and provides them a substantial benefit.

9. Risk of fraud or collusion: Courts presume the absence of fraud or collusion unless proven otherwise. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion."). Further, where the Court is involved in helping the parties settle a case, there is "no risk of fraud or collusion among the parties." *Moran v. Wunderlich*, 2007 WL 3005235, at *2 (S.D. Ohio 2007) (settlement negotiations mediated by Chief Magistrate Judge Merz were conducted at arms-length).

10. Here, the settlements were the result of arms-length negotiations conducted over many months, the exchange and evaluation of an abundance of information, and the independent review and acceptance of the compromise by all parties. The Court conducted multiple telephone conferences and in-person mediation sessions with the parties during this process and could ascertain the arms'-length nature of the settlement negotiations from its supervision. *See Bailey v. AK Steel Corp.*, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) (expressing "absolute[] confiden[ce]" that there was no collusion in retiree health care settlement negotiations because the "[c]ourt [was] involved in helping the parties settle [the] case").

11. Amount of discovery engaged in by the parties: The docket and the submissions in this case reflect that the parties engaged in significant discovery including multiple depositions and the exchange of voluminous documents. The parties' submissions reflect that they carefully reviewed available data using expert actuarial consultants/experts. The extensive discovery and review by consulting experts supports approval of the settlement. *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (settlement approved where the parties were "fully

3

knowledgeable about the facts and legal issues involved, as well as the strengths and weaknesses of their positions").

12. <u>Opinion of class counsel and class representatives</u>: The record reflects that both Class Counsel and the Class Representatives support the settlements. Further, the competency and experience of Class Counsel herein is not disputed.

13. <u>The public interest</u>: The settlements are in the public interest not only by ensuring a significant amount of retiree medical benefits for a significant retiree group, but also by conserving the resources of the parties and the Court and promoting the "strong public interest in encouraging settlement of complex litigation and class action suits." *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *27 (E.D. Mich. 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007); *Hainey v. Parrott*, 2007 WL 2752375, at *9 (S.D. Ohio 2007) ("Public policy generally favors settlement of class action lawsuits."). Moreover, "the public interest clearly favors the providing of meaningful health insurance coverage for as much of the population [as] possible." *Bailey*, 2008 WL 495539, at *4.

14. <u>Complexity, expense and likely duration of litigation</u>: Litigation over retiree benefits can be expensive and protracted. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (case litigated for nine or more years); *Bittinger v. Tecumseh Prods. Co.*, 201 F.3d 440 (6th Cir. 1999) (five years); *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1478 (6th Cir. 1983) (seven years). "The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006). *See also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) (same).

15. Based on the aggressive litigation of this case to date and its similarity to past cases that went on for years, the Court finds that but for the settling of this matter, it is likely that the litigation would have continued for more months and years both at the trial court and the appellate level. Prior to the settlement negotiations, the parties had engaged in contentious motions practice concerning summary judgment, class certification and preliminary injunction motions. The parties also had gone well into the process of litigating Defendant's appeal of the Order granting the preliminary injunction to the Sixth Circuit. Given "the scope and pace with which the case has proceeded to date ... there can be no doubt that the continued litigation of this case would require the parties to expend significant additional resources." *Bailey*, 2008 WL 495539, at *3. Because "[a]voiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court," this factor weighs in favor of final approval of the Settlement Agreements. *In re Delphi Corp.*, 248 F.R.D. at 498.

16. <u>Reaction of absent class members</u>: As described in the submissions filed with the motion for final approval, all class members herein were sent a notice packet, including a plain language explanation of the hourly and salaried class settlements, and including copies of the hourly and salaried settlement agreements and a draft VEBA document. The notice was approved by this Court as part of its preliminary approval Order and the Court finds that the class notice met all due process requirements and that

4

it "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *General Motors*, 497 F.3d at 629.

17.  In this case only a single objection was submitted, which the relevant class member later requested to withdraw. In this regard the Court hereby grants Plaintiffs' motion to allow the withdrawal of said objection. This lack of objectors is a powerful indicator that the settlements are fair, reasonable, and adequate. *Compare Robinson v. Ford Motor Co.*, 2005 WL 5253339, at *5 (S.D. Ohio June 15, 2005) (holding that "a relatively small number of class members who object is an indication of a settlement's fairness"); *In re Cardizem*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

18.  In summary, the Court finds that under Fed. R. Civ. P. 23(e)(1)(C) the hourly and salaried settlements herein are fair, reasonable and adequate and should be approved. Accordingly, the Court grants the parties' motions for final approval of the settlements.

IT IS SO ORDERED.

Dated: 1/10/11

Timothy S. Black
UNITED STATES DISTRICT JUDGE

5